IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| ROSALY FIGUEROA, LEONARD ANTONELLI, | : : : | |
| Plaintiffs, | : : | Civil No. 20-1314 (RBK/JS) |
| v. | : : | **OPINION** |
| NJ DEPARTMENT OF CHILD & FAMILY SERVICES, *et al.*, | : : : : | |
| Defendants. | : : | |

| | | |
|---|---|---|
| ROSALY FIGUEROA, *on behalf of A.P. a minor*, | : : : : | |
| Plaintiff, | : : | Civil No. 20-2003 (RBK/JS) |
| v. | : : | **OPINION** |
| JAMEELA HULL, *et al.* | : : : | |
| Defendants. | : : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon *pro se* Plaintiffs Rosaly Figueroa and Leonard Antonelli's Amended Complaint (Doc. No. 5 in Case No. 20-1314 ("FAC")), application to proceed *in forma pauperis* ("IFP") (Doc. No. 1-1 in Case No. 20-1314), and Figueroa's Writ of

1

Habeas Corpus (Doc. No. 1 in Case No. 20-2003 ("2nd Writ"))[1] and application to proceed IFP (Doc. No. 1-1 in Case No. 20-2003). In both cases, Plaintiffs seek the return of their son, "A.P.," who on February 7, 2020 was seized by the New Jersey Division of Child Protection and Permanency ("DCPP"). The Court has already granted Plaintiffs' application to proceed IFP in Case No. 20-1314 (Doc. No. 3 in Case No. 20-1314), and now grants Figueroa's IFP application in Case No. 20-2003. Nevertheless, pursuant to 28 U.S.C. § 1915(e)(2), the Court must screen Plaintiffs' Amended Complaint and Figueroa's Writ of Habeas Corpus (which functions as her complaint in Case No. 20-2003) to determine whether Plaintiffs' action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from an immune defendant. For the reasons set forth below, Plaintiffs' Amended Complaint and Figueroa's Writ of Habeas Corpus are **DISMISSED**.

I.  BACKGROUND

Case No. 20-1314 and Case No. 20-2003 plainly relate to the same factual circumstances, advance the same legal theories, and seek the same relief. Further, every Defendant in Case No. 20-2003 appears to be a Defendant in Case No. 20-1314. As such, the Court draws from Plaintiffs' submissions in both cases to construct its narrative of events.

Perhaps as a result of the immense stress they must be experiencing, Plaintiffs' allegations are vague, confusing, and frequently hyperbolic. By their account, A.P. spilled hot milk on himself, burning his right shoulder and arm, resulting in second and first-degree burns (FAC at 3; Doc. No. 1-4 at 17). This apparently occurred on Sunday, January 26, 2020. (Doc. No. 1-4 at 21). On January 30, 2020, A.P. was taken to Cooper Hospital, where Plaintiffs were told that A.P. was not in any danger. (FAC at 3; Doc. No. 6 in Case No. 20-1314 ("1st Writ") at ¶ 6). However, DCPP got

---

[1] The allegations in the Amended Complaint in Case No. 20-1314 and in the Writ of Habeas Corpus in Case No. 20-2003 are entirely duplicative in substance, although the allegations in the Writ are somewhat more detailed.

involved, and coerced the Cooper Hospital nurses into saying that A.P. was in in imminent danger. (1st Writ at ¶ 6). Then, on February 7, 2020, Defendants Jameela Hull, Shirley, and Hailey, social workers with DCPP, arrived at Plaintiffs' home. (2nd Writ at ¶¶ 2–3). Armed with a "Notice of Emergency Removal Pursuant to N.J.S.A. 9:6-8.29 and 9:6-8.30 without court Order," these social workers seized A.P. and removed him from Plaintiffs' custody. (*Id.* at ¶ 3).

Plaintiffs' initiated this action on February 7, 2020 by filing a Complaint (Doc. No. 1 in Case No. 20-1314) and a Motion for an *ex parte* Temporary Restraining Order ("TRO") (Doc. No. 1-3 in Case No. 20-1314) seeking to prevent the imminent seizure of A.P. After a hearing, the Court denied Plaintiffs' Motion, but granted their application to proceed IFP. (Doc. No. 3 in Case No. 20-1314). On February 11, 2020, Plaintiffs filed their Amended Complaint and a self-styled Petition for Writ of Habeas Corpus (1st Writ), which the Court denied on procedural grounds, (Doc. No. 7 in Case No. 20-1314). On February 25, Plaintiff Rosaly Figueroa initiated a new case under Docket Number 20-2003 by filing another Writ of Habeas Corpus (2nd Writ). The Court again denied the habeas petition on procedural grounds and ordered the new case to be consolidated with the prior one under Docket Number 20-1314. (Doc. No. 2 in Case No. 20-2003).

## II. LEGAL STANDARD

District courts must review IFP complaints and *sua sponte* dismiss any action or appeal that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Whether a complaint should be dismissed under § 1915 because it fails to state a claim is assessed under the same standard as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Rhodes v. Maryland Judiciary*, 546 F. App'x 91, 93 (3d Cir. 2013).

When evaluating a 12(b)(6) motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Further, federal courts have a constant obligation to satisfy themselves of their subject-matter jurisdiction and to decide the issue *sua sponte. See Liberty Mutual Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995). Under Federal Rule of Civil Procedure 12(h)(3), a federal court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction."

## III. DISCUSSION

Plaintiff's do not clearly invoke any particular cause of action, instead simply asserting that Defendants' seizure A.P. was unconstitutional and that therefore he should be returned to their custody. (2nd Writ at ¶ 14). However, federal courts do not have jurisdiction to adjudicate child custody decrees. *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006) (noting that "only divorce,

4

alimony, and child custody decrees remain outside federal jurisdictional bounds" (internal quotation omitted)); *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (explaining that the "whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States" (internal quotation omitted)); *Foster v. New Jersey Div. of Child Protection & Permanency*, No. 17-13572, 2018 WL 6069632, at *2 (D.N.J. Nov. 20, 2018) (finding court lacked jurisdiction to adjudicate claim against DCPP that "boils down to a dispute over the custody of [a] child and the interactions of [p]laintiff and [d]efendants in that custody process"); *New Jersey Div. of Youth & Family Servs. v. Prown*, No. 13-7776, 2014 WL 284457, at *2 (D.N.J. Jan. 24, 2014) (concluding that court lacked jurisdiction to hear claims that father and minor child's rights had been violated during state case for custody of child). As such, the Court lacks subject-matter jurisdiction to hear Plaintiffs' claim.

Even if the child custody exception did not apply, the *Younger* abstention doctrine would still mandate dismissal.[2] The *Younger* abstention doctrine highlights the "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). *Younger* abstention is appropriate when: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989).

First, Plaintiffs' allege that A.P. was seized pursuant to N.J.S.A. 9:6-8.29 and N.J.S.A. 9:6-8.30. N.J.S.A. 9:6-8.29(a) provides that DCPP employees

---

[2] The doctrine originated in *Younger v. Harris*, 401 U.S. 37 (1971). Although *Younger* itself dealt only with a state criminal prosecution, the Supreme Court has since held that the doctrine also applies to "civil enforcement proceedings and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Comm., Inc. v. Jacobs*, 571 U.S. 69, 73 (2013).

5

> may remove a child from the place where the child is residing . . . if the child is in such condition that the child's continuance in the place or residence or in the care and custody of the parent or guarding presents an imminent danger to the child's life, safety, or health, and there is insufficient time to apply for a court order.

N.J.S.A. 9:6-8.30 further provides that there will be a court hearing to determine the "sufficiency of cause for the child's removal" within two days of the removal, and that the DCPP shall file a custody lawsuit within two days of the removal. Because removal under these statutes automatically triggers judicial intervention, the DCPP's seizure of A.P. on February 7 represented the initiation of state proceedings that are judicial in nature.

Second, as discussed above, the state has an important interest in domestic relations. *Ankenbrandt*, 504 U.S. at 704. And third, Plaintiffs will have an opportunity to raise their federal constitutional objections to A.P.'s seizure before the state court. *McDaniels v. New Jersey Div. of Youth and Family Servs.*, 144 F. App'x at 213, 215 (3d Cir. 2005) (citing *Maisonet v. Dep't of Human Serv., Div. of Family Dev.*, 657 A.2d 1209, 1212–1213 (N.J. 1995); *see also Foster*, 2018 WL 6069632, at *3 (finding that *Younger* abstention barred adjudication of claims bound up with New Jersey child custody proceedings).

Even when these conditions are met, "*Younger* abstention is not appropriate when (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist." *Lazaridis v. Wehmer*, 591 F.3d 666, 670 n.4 (3d Cir. 2010). The bad faith exception only applies when the state proceeding "is brought 'without hope' of success." *Getson v. New Jersey*, 352 F. App'x 749, 753 (3d Cir. 2009) (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)). Although Plaintiffs' repeatedly accuse the DCPP of being the "new Gestapos" and acting in bad faith, (*see e.g.*, 2d Writ at ¶¶ 4–5, 6), such conclusory allegations are insufficient to invoke the bad faith exception. And given that A.P. suffered second-degree burns while under Plaintiffs' care only to go days without receiving medical treatment, the Court cannot

6

conclude that DCPP's removal action was initiated without hope of success. As such, *Younger* abstention provides an alternative basis for the dismissal of Plaintiffs' claims.

## IV. CONCLUSION

For the forgoing reasons, Plaintiffs' Amended Complaint in Case No. 20-1314 is **DISMISSED**, pursuant to 28 U.S.C. § 1915(e)(2)(B) and Federal Rule of Civil Procedure 12(h)(3), and Plaintiff Figueroa's "Writ of Habeas Corpus" in Case No. 20-2003 is also **DISMISSED**, pursuant to 28 U.S.C. § 1915(e)(2)(B) and Federal Rule of Civil Procedure 12(h)(3). Plaintiffs' claims in both cases are dismissed without prejudice to refiling in a court of competent jurisdiction. An Order follows.

Dated: 02/27/2020

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge